1  Erika E. Alba (CA State Bar No. 170287)
   erika@wolseymorcom.com
2  Woolsey Morcom Attys at Law
   6080 Center Drive, 6th Floor
3  Los Angeles, CA  90045
   (213) 371-0182
4
5  Counsels for Plaintiff
   LAURIE MCCORMICK
6
7
8                    **UNITED STATES DISTRICT COURT**
9                   **SOUTHERN DISTRICT OF CALIFORNIA**
10
11
12  LAURIE MCCORMICK,                    Case No. 3:23-cv-02035-JES-DEB
13              Plaintiff,               AMENDED COMPLAINT FOR:
14      vs.                              1.      BREACH OF CONTRACT
15  LIBERTY INSURANCE                    2.      BREACH OF COVENANT OF
    CORPORATION,                                 GOOD FAITH AND FAIR
16                                               DEALING
              Defendant.                3.      UNFAIR BUSINESS PRACTICES
17                                       4.      ELDER ABUSE PURSUANT TO
18                                               WELFARE & INST CODE
                                                 SECTION 15610.30(b)
19
20                                       UNLIMITED CIVIL, DEMAND OVER
                                         $75,000.00
21
                                         **DEMAND FOR JURY TRIAL**
22
23
24          AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
25          COME NOW, the Plaintiff, LAURIE MCCORMICK, (hereinafter referred to as
26  "Plaintiff"), by and through the undersigned counsel, and hereby sue Defendant
27  LIBERTY MUTUAL INSURANCE COMPANY (hereinafter referred to as
    "Defendant"), and as grounds therefore state as follows:
28

                                    1
                              COMPLAINT

/ / /

## JURISDICTION AND VENUE

1.     This is an action for damages that exceeds the sum specified in 28 U.S.C. § 1332, exclusive of attorneys' fees, costs, and pre-judgment interest.

2.     At all times material, Plaintiff is a natural person and citizen of the state of California, residing in Coronado, San Diego County, California.

3.     At all times material hereto, Plaintiffs owned and resided at 84 Kingston Ct., Coronado, CA 92118 (the "Property").

4.     At all times material hereto, Defendant was a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Massachusetts.

5.     Jurisdiction and venue are proper in this Court.

## GENERAL ALLEGATIONS

6.     At all times material, Plaintiff's Property was covered and insured for covered losses by a homeowner's policy (policy number H67-26891275340) (hereafter the "Policy") issued by Defendant (the "Policy"). A copy of the Policy is attached thereto as Exhibit "A."

7.     At all times material, Plaintiff had paid all premiums on the Policy, and the Policy was in full force and in effect.

8.     Plaintiff is a seventy-one-year-old woman who owns and resides in a condominium unit located on the second floor of the Coronado Cays condominium development.

9.     On March 10, 2023, Plaintiff's Property was damaged due to a structure fire that occurred in the first-floor condominium unit located directly below Plaintiff's unit.

10.     The fire caused Plaintiff's Property to sustain significant damage through the deposits of soot and char on surfaces throughout the unit including the walls, flooring, clothing, and personal property.

9.  The damage to the Property was caused by a direct physical loss, a covered peril under the Policy.

10.  The damage to Plaintiff's property was accidental, continuing in nature, and covered under the Policy.

/ / /

11.  On the same day as the incident, Plaintiff made a timely application for insurance benefits under the Policy: Defendant opened coverage on the claim and assigned Plaintiff claim number 052813346-01.

12.  From the commencement of the claim, Defendant has refused to take Plaintiff or her claim seriously; namely, Defendant's adjuster has directed her fact-gathering communications regarding the claim to the Coronado Cays Homeowners Association ("HOA") staff, not Plaintiff, even though the HOA is an interested third party that is also responsible for damages to the Plaintiff's property due to this incident.

13.  On March 23, 2023, Plaintiff submitted a repair estimate from a restoration company.

13.  On March 29, 2023, Defendant commissioned an inspection to be conducted by an outside consultant who visited the property to collect surface samples to test for the presence of combustion product concentrations. However, the consultant refused to collect any samples in areas where Plaintiff informed him were problem areas, and as the inspection progressed, it was clear to Plaintiff that this consultant was willfully ignoring multiple areas and minimizing others, and the consultant had no intention of testing in areas known to contain soot and char. Not surprisingly, Defendant's assessment of Plaintiff's claim did not change because of this second inspection.

14.  Recognizing that Defendant's contamination assessment was in error, Plaintiff's retained who retained an ecological laboratory to conduct its own inspection. This inspection occurred three weeks later on April 17, 2023, and with

just one sample taken from the kitchen area, the lab found combustion product concentrations equaling 32% Ash-like Soot from the incomplete combustion of wood products, 18% of Ash-like Soot formed from the combustion of wood products, 31% from Soil Minerals, and 2% possibly from carbon black, fly ash, coal, and coke.

15.    When informed of the findings of Plaintiff's ecological lab inspection, Defendant sent a second consultant out from the same company that conducted Defendant's first inspection. On May 4, 2023, this second consultant took a total of ten samples of which all ten registered the presence of char and three showing the presence of char exceeding the threshold considered to be clean.

/ / /

16.    Disregarding the findings of Defendant's second inspection, Defendant then referred a restoration company to Plaintiff that proposed to clean and seal Plaintiff's subfloor from the downstairs unit without entering Plaintiff's property, thus ignoring that Plaintiff's interior and flooring also needed proper restoration.

17.    Due to Defendant's refusal to properly handle this claim, Plaintiff retained two additional forensic consultants to inspect the Property and collect surface samples to be tested for the presence of combustion products. On July 7, 2023, one of these consultants collected twelve samples to be tested. Of the twelve, all twelve tested positive for black carbon clusters ("soot") and six samples tested positive for carbonized materials ("char"). Like the sample testing by Defendant's consultant in May, many of the positive samples exceeded the threshold for the Property to be considered clean. Each of Plaintiff's three experts found that thorough remediation is necessary to cure the property of dangerous and harmful chemicals that were contained in the smoke and soot.

18.    In total, Plaintiff has provided Defendant with three separate inspection reports each of which found extensive soot and char damage to the Property: damage which is consistent and foreseeable to a second-floor condominium when a catastrophic fire occurs in the unit directly below it. Defendant's own expert

concluded that soot and char residue remain in the Property.

19.    To date, Defendant continues to disregard all expert evaluations not supporting its finding of damage to the Property.

20. Two weeks prior to the filing of this suit, Defendant again asked to re-inspect the property; however, Defendant's inspection merely consisted of a new adjuster providing a desk review of the claim: no further physical inspection was made.

22.    On June 2, 2023, Defendant issued a five thousand, two-hundred-dollar ($5200.00) settlement which did not address Plaintiff's flooring or contents of her home.

21.    Due to Defendant's refusal to pay for proper remediation of the soot remaining in Plaintiff's Property, Plaintiff may be left in a position where, if desiring to rent out the property, she will have to post a Proposition 65 warning because soot is a cancer-causing chemical included in California's Proposition 65 list of carcinogens.

22.    Although six months have passed since the fire, Plaintiff remains unable to reside "inside" her unit due to the continuing smoke odor and breathing discomfort she feels whenever inside the residence, thus she sleeps outside on the exterior deck of the Property.

23.    Plaintiff's personal property has also sustained soot and char damage: damage which has not been alleviated by Plaintiff's mitigation and cleaning efforts. Defendant has made zero offer to compensate Plaintiff for this covered loss.

24.    All conditions precedent to obtaining payment of said benefits under the Policy from Defendant have been compiled with, met, or were waived by Defendant.

25.    To date, Defendant has paid Plaintiffs a settlement amount far short of that necessary to return Plaintiffs' property to its pre-fire condition.

### FIRST CAUSE OF ACTION

**(Breach of Contract Against Defendant)**

26.    Plaintiff hereby incorporates by reference paragraphs 1 through 25, as though fully set forth therein. Plaintiff and Defendant are parties to a valid and binding contract under which Defendant is required to provide insurance benefits to Plaintiffs in the event of a covered loss to Plaintiff's Property.

27.    Plaintiff has suffered a covered loss to the Property.

28.    Defendant has breached the Policy by failing to fully acknowledge Plaintiff's covered loss and failing to pay Plaintiff all the benefits due and owing under the Policy.

29.    Plaintiff has been damaged by Defendant's breach of contract.

30.    As a direct, proximate, and legal result of Defendant's breach of the contract, Plaintiff has suffered damages including, but not limited to, the loss of benefits due under the contract, consequential damages including interest on monies the Plaintiff should have received promptly, but which she did not receive in a timely fashion due to Defendant's breach of contract, and other fees, expenses, and costs to be proven at trial.


**SECOND CAUSE OF ACTION**

**(Breach of Good Faith and Fair Dealing by Defendant)**

As and for a separate and distinct Second Cause of Action, Plaintiff complains against Defendant as follows:

31.    Plaintiff re-alleges and incorporates the allegations of paragraphs 1 through 23 of this complaint as though set forth in full herein.

32.    Defendant and Plaintiff entered into an insurance contract, namely, the Policy, which contained an implied covenant of good faith and fair dealing, whereby Defendant agreed to perform its obligations under the policy in good faith, to deal fairly with Plaintiff and not to unreasonably deprive her of her rights, and to not

engage in any acts conduct or omissions that would impair or diminish the rights and benefits due Plaintiff under the Policy.

33.   Plaintiff has faithfully performed all obligations required to be performed by her under the terms of the contract, except to the extent performance may have been excused by, among other things, Defendant's bad faith conduct and breach of the policy.

34.   Defendant breached the implied covenant of good faith and fair dealing arising from the contract by unreasonably denying Plaintiff the full and complete payment of benefits due and owing under her Policy.

35.   Despite Plaintiff's demand that all owed monies be paid, Defendant refuses to do so and continues to engage in its unlawful insurance practice. Such bad faith conduct constitutes a continuing tort which is causing Plaintiff continued economic and emotional distress from being prevented from repairing her Property to its pre-fire condition.

36.   Defendants tortiously breached this implied covenant of good faith and fair dealing further by:

a.   Failing to provide Plaintiff with a copy of her policy upon request within 30-day statutory timeframe as required under section California Insurance Code Section 395 even when repeatedly being requested to do so by Plaintiff's counsel, and

b.   Failing to communicate with Plaintiff directly, and instead, seeking to obtain information about Plaintiff's claim her HOA, an interested third party that also has a monetary interest in how Plaintiff's claim is evaluated.

37.   Defendants engaged, and continues to engage, in a course of conduct to further its own economic interests in violation of its obligations to Plaintiffs. This conduct includes, but is not limited to, the conduct alleged in this complaint and the following:

a.   Failing to conduct an adequate investigation into Plaintiffs' loss by

limiting the scope of its own expert inspections, presumably to lessen the likelihood that additional damage would be discovered, and

    *b.*    Completely disregarding three independent expert reports submitted by the Plaintiff which outlined and illustrated the extent of damage to the Property, and

    *c.*    Offering Plaintiff an unreasonable "lowball" settlement amount.

38.    Defendant's conduct described herein constitutes part of Defendant's overall scheme to reduce the payment of legitimate policyholders claims. Defendant's conduct as described herein likely constitutes an illegal pattern and practice Defendant engages in to minimize claim payments to its policyholders.

39.    Without any reasonable basis for doing so, and with full knowledge and/or conscious disregard of the consequences, Defendant has failed to, and refused to, act in good faith or act fairly toward Plaintiff, and Defendant has, in bad faith, failed and refused to perform their obligations under the insurance policy, and under the laws of the State of California.

40.    The acts alleged were part of Defendant's ordinary business practice designed to keep from paying Policy benefits which are legitimately owed to the Plaintiff to increase Defendant's profits. In doing so, and in doing the acts set forth above, Defendant has directly caused Plaintiff to be unable to repair the Property, and thus suffer extreme emotional distress.

41.    As a direct, proximate, and legal result of said breaches of the covenant of good faith and fair dealing by Defendant, Plaintiff has been, and continues to be, damaged in an amount including, but not limited to, the loss of policy benefits and loss of money necessary for the repair and replacement of Plaintiff's Property, in an amount according to proof. Plaintiff has been required to expend attorneys' fees and costs in pursuing relief to which they are entitled as a matter of law pursuant to *Brandt v. Superior Court* (1985) 37 Cal.3d 813,  Plaintiff is entitled to attorneys' fees and costs reasonably incurred to compel the payment of benefits due under the Policy.

42.     As a direct, proximate, and legal result of the wrongful conduct of Defendants, Plaintiff has sustained economic damages, compensatory, and other damages in an amount to be proven at trial.

43.     As a further and direct proximate result of the aforementioned conduct of Defendant, Plaintiff has suffered other consequential damages in the amounts according to proof at the time of trial which include, but are not limited to, the lack of the availability of said funds owed under the policy.

## THIRD CAUSE OF ACTION

### (Breach of California's Unfair Competition Law as Defines in Business & Professions Code Section 17200 et Seq.)

44.     Plaintiff re-alleges and incorporates herein by reference the allegations contained in the preceding paragraphs of this complaint, as thoughtfully set forth herein.

45.     Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's violation of the California Unfair Competition Law, as codified in Business & Professions Code Section 17200 et seq.

46.     Defendant has engaged in, and continues to engage in, a general practice of failing to properly investigate claims made on their homeowner policies by refusing to utilize experts or adjusters with the appropriate level of expertise and training to adequately assess policy holders' property damage

47.     Defendant has engaged in, and continues to engage in, a general practice of undervaluing damage to policyholders' property when evaluating insurance claims allowing Defendant to underpay on those claims, and consequently, increase its own profits.

48.     By engaging in the above-described practice and committing the acts and omissions herein alleged, Defendant has committed one or more acts of unlawful, unfair, and/or fraudulent competition within the meaning of the California Business

& Professions Code Section 17200 et seq.

49.    Defendant's conduct is unlawful because it violates, at a minimum, California Insurance Code Section 2071, California insurance Code Section 790.03(h), and other statutes, laws, and regulations.

50.    Defendant's unfair conduct in violation of California Business & Professions Code Section 17200, et seq, includes, but is not limited to, failing to promptly and pay the full benefits due to the Plaintiff under her insurance policy and engaging in a course of conduct to further its own economic interests in violation of its obligations to its insured. This conduct lacks any utility and, even if it had any utility, such utility would be outweighed by the substantial harm to the consumer. Defendant's practice is also immoral, unethical, oppressive, or unscrupulous and causes injury to consumers which outweighs its benefits. Defendant's practice also contravenes express legislative policy as set forth in California Insurance Codes Sections 2071 and 790.03(h).

51.    By reason of the foregoing, Defendant has been improperly and unjustly enriched to the detriment of Plaintiff in an amount to be proven at trial. Plaintiff is entitled to have Defendant disgorge and restore to Plaintiff all monies wrongfully obtained by Defendant as a result of its conduct as alleged herein.

**FOURTH CAUSE OF ACTION**

**(Elder Financial Abuse as Defined in Welfare & Institutions Codes 15610.30(b))**

52.    Plaintiff re-alleges and incorporates herein by reference the allegations contained in the preceding paragraphs of this complaint, as thoughtfully set forth herein.

53.    Defendant knew or should have known that Plaintiff is an elder as defined in California Welfare & Institutions Code Section 15610.27.

54.    Defendant engaged in financial elder abuse by withholding funds due to Plaintiff under the homeowner's policy in effect at the time of the claim.

55.    Defendant committed financial elder abuse as defined in Welfare & Institutions Code Section 15610.30(b) when

      *a.*    it took policy premiums from the Plaintiff with no intent to of fully paying benefits promised under the policy,

      *b.*    by and through the insurance application process and internal company records, the Defendant has or had knowledge that the insured is an elder,

      *c.*    the Defendant intentionally under-scoped and under-adjusted the loss,

      *d.*    the Defendant unreasonably sought information about the claim from an interested third party rather than the Plaintiff, and

      *e.*    the Defendant wrongfully retained policy benefits by delaying and denying Plaintiff payment that was due and owing under the Policy.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.    For compensatory damages on all applicable claims in an amount to be proven at trial and other damages according to proof.

2.    For special and consequential damages according to proof.

3.    For costs.

4.    For interest.

5.    For attorneys' fees and costs reasonably incurred to compel the payment of benefits under the Policy as permitted under *Brandt v. Superior Court* (1985) 37 Cal.3d 813 and Section 15657.5(a) of the California Welfare & Institutions Code.

6.    California Code of Civil Procedure section 1021.5, the common fund doctrine, other applicable law, and the homeowners' policy.

7.    For such other relief as the Court deems just and proper.

Dated: _November 7 2023_                    _[signature]_
                                            Erika Alba, Esq.
                                            Counsel for Plaintiff
                                            LAURIE MCCORMICK

## JURY DEMAND

Plaintiffs demand a trial by jury on all issued in this action.

Dated: _November 7, 2023_                    _[signature]_
                                            Erika Alba, Esq.
                                            Counsel for Plaintiff
                                            LAURIE MCCORMICK